# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STACEY WOODHAM,

        Plaintiff,

   v.

MORGAN STANLEY (PARENT
COMPANY) and E*TRADE FINANCIAL
(SUBSIDIARY) REFERRED TO AS
E*TRADE FROM MORGAN STANLEY,

        Defendants.

No. 1:23-cv-02080

**OPINION**

**APPEARANCES**:

Stacey Woodham
29 Club House Drive
Willingboro, NJ 07046

   *Pro Se.*

Eric D. Wong
Greenberg Traurig, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932

   *On behalf of Defendants.*

**O'HEARN, District Judge**

## INTRODUCTION

This matter comes before the Court on Defendants', E\*TRADE Securities LLC[1] ("E\*TRADE") and Morgan Stanley (DE)[2] ("Morgan Stanley") (collectively, "Defendants"), Motion to Stay and Compel Arbitration. (ECF No. 6). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons stated herein, Defendants' Motion is **GRANTED**.

## I.   FACTUAL BACKGROUND

On January 9, 2023, Plaintiff Stacey Woodham opened two online accounts with E\*TRADE. (ECF No. 1 at 6; Exhs. A–B, ECF No. 6-2 at 5–10). On January 30, 2023, Plaintiff was informed that various features would be disabled on her account, until she verified her identity by providing her social security card. (ECF No. 1, ¶ 2). Plaintiff alleges that she then closed her E\*TRADE accounts via written correspondence on January 31, 2023. (ECF No. 1, ¶ 3).

Between February 1 and February 28, 2023, a series of in-person, telephone, and written communications took place between Plaintiff and Defendants concerning the restrictions on her account. (ECF No. 1, ¶¶ 4–11). Plaintiff alleges that she was met with increasing demands that she prove her identity in a variety of ways. (ECF No. 1, ¶¶ 4–11). During this time, she also lodged complaints against Defendants with the Security and Exchange Commission ("SEC"), the Department of Justice ("DOJ"), Federal Trade Commission ("FTC"), and Financial Industry Regulatory Authority ("FINRA"). (ECF No. 1, ¶ 13). She alleges that the stress of this process caused her mental anguish and physical distress. (ECF No. 1, ¶ 12). She also alleges that her race was a reason for the increasing demands for the identity verification. (ECF No. 1, ¶ 6).

---

[1] Plaintiff improperly pled E\*TRADE as "E\*TRADE Financial (Subsidiary) referred to as E\*TRADE from Morgan Stanley."

[2] Plaintiff improperly pled Morgan Stanley as "Morgan Stanley (Parent Company)."

Finally, on March 10, 2023, Plaintiff received a letter, on which the SEC was copied, from the Defendants' compliance department informing her that her identification had been accepted and the restrictions had been removed from her account. (ECF No. 1, ¶ 14). On March 21, 2023, she received an identical letter, this time copied to FINRA. (ECF No. 1, ¶ 15).

During the application process for her online account, by clicking a button in the application, Plaintiff affirmed that she "[Understood] THAT THIS ACCOUNT IS GOVERNED BY THE PREDISPUTE ARBITRATION CLAUSE IN SECTION 12 OF THE E*TRADE CUSTOMER AGREEMENT." (Exhs. A–B, ECF No. 6-2 at 5–10). The text "E*TRADE CUSTOMER AGREEMENT" was displayed in blue font and contained a hyperlink to the customer agreement. (Exhs. A–B, ECF No. 6-2 at 5–10; ECF No. 6-1 at 8). The arbitration clause in section 12 of the customer agreement[3] reads as follows:

12. Arbitration Agreement and Disclosures

This Customer Agreement contains a predispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:

     i.      All parties to this Customer Agreement are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

---

[3] The arbitration clause at issue in this case states that "[t]he Account Holder agrees that any arbitration hearing will be held in New York, New York, unless otherwise agreed to between E*TRADE and the Account Holder or unless Financial Industry Regulatory Authority (or other self-regulatory organization administrating the arbitration) designates another hearing location." (Def. Br., ECF No. 6-2 at 56). The Court inquired as to the precise location of the arbitration hearing given that the Third Circuit has interpreted 9 U.S.C. § 4 to hold that where parties agreed to arbitrate in a particular forum *only a district court in that forum* has the authority to compel arbitration. *See Gold Lion Steel LLC v. Glob. Merch. Cash, Inc.*, No. 21-10702, 2022 WL 596997, at *6 (D.N.J. Feb. 28, 2022), *appeal dismissed*, No. 22-1535, 2022 WL 4310064 (3d Cir. Sept. 2, 2022) (collecting cases). In response to the Court's inquiry, (ECF No. 23), Defendants confirmed that the arbitration hearing will be held in New Jersey as provided by the customer agreement and FINRA Code of Arbitration Procedure for Customer Disputes. (ECF No. 24). As such, the Court has the authority to compel arbitration in this matter.

ii.  Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration is very limited.

iii.  The ability of the parties to obtain documents, witness statements, and other discovery is generally more limited in arbitration than in court proceedings.

iv.  The arbitrators do not have to explain their reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the final scheduled hearing date.

v.  The panel of arbitrators may typically include a minority of arbitrators who were or are affiliated with the securities industry.

vi.  The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

vii.  The rules of the arbitration forum in which the claim is filed and any amendments thereto shall be incorporated into this Customer Agreement.

The Account Holder agrees to resolve by binding arbitration any controversy that may arise between E*TRADE Securities or its affiliates and the Account Holder relating in any way to the Account Holder's relationship with E*TRADE, any Account held with E*TRADE, or any service provided to the Account Holder by E*TRADE. This arbitration agreement includes any controversy involving transactions of any kind made on the Account Holder's behalf by or through E*TRADE or the performance, construction, or breach of this Customer Agreement or any other written agreement between E*TRADE and the Account Holder. Such arbitration will be conducted in accordance with the FINRA rules then in effect unless the rules of another self-regulatory organization to which E*TRADE is subject mandate arbitration before that organization, in which case the arbitration will be conducted in accordance with the rules then in effect of that organization. Any dispute or claim involving a dollar amount in excess of $100,000 will be before a panel of at least three arbitrators. The Account Holder makes this arbitration agreement on behalf of itself and the Account Holder's heirs, administrators, representatives, executors, successors, and assigns and together with all other persons claiming a legal or beneficial interest in the Account.

Any award of the arbitrator or a majority of the arbitrators will be final and binding, and judgment on such award may be entered in any court having jurisdiction. This arbitration provision will be enforced and interpreted exclusively in accordance with applicable federal laws of the United States, including the Federal Arbitration Act. Any costs, attorney fees, or taxes involved in confirming or enforcing the award will be fully assessed against and paid by the party resisting the confirmation or enforcement of said award.

(Exh. C, ECF No. 6-2 at 55–57). Defendants bring its Motion, (ECF. No. 6), pursuant to these provisions seeking to compel arbitration of Plaintiff's claims.

On April 13, 2023, Plaintiff initiated this action, alleging (i) violations of 42 U.S.C. § 1981 *et seq*, (ii) common law intentional infliction of emotional distress, (iii) invasion of privacy: false light, (iv) common law libel, and (v) common law negligence. (ECF No. 1, pp. 11–13). On May 17, 2023, Defendants filed the present Motion. (ECF No. 6). Plaintiff filed opposition on May 25, 2023, to which Defendants replied. (ECF Nos. 10, 18). Plaintiff filed a sur reply on June 14, 2023.[4] (ECF No. 20).

## II.    LEGAL STANDARD

Arbitration provisions are commonplace in consumer contracts and involve the waiver of a party's right to have their claims and defenses litigated in court. *See, e.g.*, *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 309 (N.J. 2014). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, requires that courts "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA strongly favors the enforcement of arbitration agreements. *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020).

The Third Circuit has adopted a two-step test for assessing motions to compel arbitration. *See Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). To grant a

---

[4]  Under Local Rule 7.1 (d)(6), "[n]o sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned." Here, Plaintiff did not obtain permission before filing the sur reply. (ECF No. 20). "[T]he Court typically will not consider sur-replies that parties have filed without seeking and receiving leave to do so." *Norkunas v. S. Pa. Transp. Auth.*, No. 19-627, 2019 WL 6337913, at *2 n.3 (D.N.J. Nov. 27, 2019) (citing *Young v. United States*, 152 F. Supp. 3d 337, 352 (D.N.J. 2015)). Additionally, sur replies are only meant to address new issues raised by the opposing party for the first time in reply, which is not the case here. *See Zahl v. Local 641 Teamsters Welfare Fund*, No. 09-1100, 2010 WL 3724520, at *3 (D.N.J. Sept. 14, 2010). As such, the Court will not consider Plaintiff's sur reply.

motion under this framework, a court must determine that: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the agreement's scope. *Id.* In some cases, a court must consider whether the parties agreed to arbitrate using the traditional Rule 12(b)(6) standard without discovery, but in others, it must use the Rule 56 summary judgement standard after some discovery. *E.g., Matczak v. Compass Grp. USA, Inc.*, No. 21-20415, 2022 WL 557880, at *1–3 (D.N.J. Feb. 24, 2022). To determine which standard is appropriate, the Third Circuit has articulated the following framework:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citations and quotations omitted). This bifurcated standard is the result of an intent to balance the competing purposes of the FAA, which aims to foster "efficient and speedy dispute resolution" while upholding the "significant role courts play in interpreting the validity and scope of contract provisions." *Id.* at 773. Ultimately, "[t]he centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Id.* at 774–76.

Applying the *Guidotti* standard here, the appropriate legal framework is Rule 12(b)(6) because, as explained below, *see infra* Part III, it is apparent based on documents implicitly relied upon in Plaintiff's Complaint that her claims are subject to an enforceable arbitration clause. *See id.* at 776; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196

(3d Cir. 1993) (holding that courts may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a [Rule 12(b)(6) motion . . . if the plaintiff's claims are based on the document"). Plaintiff does not dispute that she entered into the agreements, that she affirmed the agreements, the terms set forth therein, or any other material issues related to the arbitration provision. Rather, Plaintiff's only dispute arises from E*TRADE's alleged attempts to verify her identity when opening her accounts. Therefore, the Court can consider the agreements without converting Defendants' motion into a motion for summary judgment. *See N.H. Ins. Co. v. Dielectric Commc'ns., Inc.*, 872 F. Supp. 2d 458, 461 (E.D. Pa. 2012); *see* FED. R. CIV. P. 12(d).

When considering a motion under the Rule 12(b)(6) standard, a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On such a motion, the court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong*

*Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The court may also consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion . . . if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.,* 998 F.2d at 1196. If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).

III.   **DISCUSSION**

For the reasons that follow, the Court concludes that (a) the arbitration clause in the Defendants' customer agreements is valid and enforceable, and (b) although the arbitrability of Plaintiff's claims must be left to an arbitrator, Plaintiff's claims are sufficiently within the scope of the clause for this Court to conduct its analysis. Accordingly, Defendants' Motion is granted.

**A.  The arbitration agreement is valid.**

The Third Circuit applies state contract law principles when determining whether parties have agreed to arbitrate a matter. *Century Indem. Co. V. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646*, 584 F.3d 513, 531 (3d. Cir. 2009) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)). The agreement in question contains a choice of law clause stating that the agreement is governed by the "internal laws of the State of New York." (ECF No. 6-2 at 63).

Under New York state contract law, "clickwrap" agreements are valid and routinely enforced. *See Whitt v. Prosper Funding LLC*, No. 15-136, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (citation omitted). Clickwrap agreements are those that "require an Account Holder to manifest assent by clicking a button confirming that they accept the terms or a button that implies that they have accepted the terms, but do not necessarily require the Account Holder to

actually view the terms." *Id.* The customer agreements at issue here fit this description because the account holder was required to agree to terms which were available via a hyperlink. *See* (Exhs. A–B, ECF No. 6-2 at 5–10). As such, the agreements are valid under New York state law.

Yet, Plaintiff appears to argue that the arbitration clause is invalid due to procedural unconscionability, stemming from the unfair bargaining positions of the parties. (ECF No. 10 at 7–9). To support this position, she cites a California state court case, *Mansouri v. Superior Court*, 181 Cal. App. 4th 633 (Cal. Ct. App. 2010). However, because the agreement in question is governed by New York state law, a California state court case applying a California state statute is not persuasive. Nevertheless, under New York law, "a provision will be deemed unenforceable on unconscionability grounds *only* where it is both procedurally and substantively unconscionable when made." *Spinelli v. NFL*, 903 F.3d 185, 208 (2d Cir. 2018) (internal quotation marks and citation omitted) (emphasis added).

Additionally, courts applying New York law have found that an agreement containing an arbitration clause written in plain unambiguous language weighs against a finding of procedural unconscionability. *See Anonymous v. JP Morgan Chase & Co.*, No. 05-2442, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) ("The arbitration agreement at issue is neither procedurally nor substantively unconscionable. The arbitration clause is clearly set out in all-caps following a heading in all-caps and bold print titled 'Arbitration Agreement.'"). As Defendants note, the arbitration clause was clearly stated in bold font: "All parties to this Customer Agreement are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." (Exh. C, ECF No. 6-2 at 55). Additionally, the arbitration clause explained that the arbitration would be conducted in

accordance with the FINRA rules. (Exh. C, ECF No. 6-2 at 56). As such, the arbitration clause is not procedurally unconscionable.

**B. Plaintiff's claims are within the scope of the arbitration agreement.**

The customer agreement states that "any controversy that may arise between E*TRADE Securities or its affiliates and the Account Holder relating in any way to the Account Holder's relationship with E*TRADE" is subject to binding arbitration. (Exh. C, ECF No. 6-2 at 56). Arbitration clauses using similar phrases, such as "arising under" or "arising out of," are normally construed broadly. *See Battaglia v. McKendry* 233 F.3d 720, 727 (3d Cir. 2000); *Trustees of New York State Nurses Ass'n Pension Plan v. Hakkak*, No. 22-5672, 2023 WL 4967071, at *6 (S.D.N.Y. Aug. 3, 2023). As noted, Plaintiff's claims arise out of Defendants' attempts to verify Plaintiff's identity in connection with her E*TRADE account. As Defendants explain, identity verification is specifically covered by the E*TRADE customer agreement: "E*TRADE is required by applicable law to obtain, verify, and record information that identified any person who opens an account." (Exh. C., ECF No. 6-2 at 2). As Plaintiff's claims are based on, and arise from, these agreements, they all fall within the scope of the arbitration clause contained within the agreement.

Plaintiff further argues that actions which took place after closing her accounts are not subject to arbitration. (ECF. No. 1 at 6). However, this challenge must be decided by an arbitrator. "Unlike a challenge to an arbitration provision, a dispute invoking the termination clause of an agreement is an attack on the agreement itself." *New Jersey Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply*, 341 F. App'x 816, 820 (3d Cir. 2009). And any dispute as to the agreement itself is one that must go before an arbitrator. Indeed, "arguments that attack the contract as a whole must be presented to an arbitrator." *Id.* (citation omitted). Nonetheless, even if the Court were to address the issue, the actions Plaintiff now complains of clearly arose before she closed

10

her accounts such that this argument is irrelevant. And "[w]hen parties have agreed to a broad arbitration clause, the duty to arbitrate survives termination of the agreement if the dispute arises under the expired agreement." *M. Cohen & Sons, Inc. v. Platte River Ins. Co.*, No. 20-2149, 2021 WL 791831, at *7 (D.N.J. Feb. 27, 2021) (citing *Nibbs v. Felix*, 726 F.2d 102, 104 (3d Cir. 1984)). Plaintiff's claims, thus, remain subject to arbitration.

### C.  E*TRADE did not waive its right to compel arbitration.

Plaintiff appears to argue that because E*TRADE, in its written communications with her, did not refer her to arbitration, and instead referred her to contact the company's legal department, it waived its right to compel arbitration. (ECF No. 10 at 10). To support this proposition, Plaintiff cites *White v. Samsung Electronics America, Inc.*, 61 F.4th 334 (3d Cir. 2023). In *White*, the Third Circuit established that a waiver occurs when a party has "intentional[ly] relinquish[ed] or abandon[ed] . . . a known right." *Id.* at 339 (quoting *Morgan v. Sundance, Inc.* 596 U.S. 411, 416 (2022)) (alterations in original). The court then held that, by this standard, "[t]hrough its actions expressing an intent to litigate, Samsung waived its right to arbitration." *Id.* at 341.

There, Samsung had filed motions to dismiss the case on the merits as well as various non-merits motions. *Id.* Additionally, Samsung did not inform the plaintiffs of the "potential for arbitration" until May 2020, despite the fact that it should have been aware of the arbitration clauses the plaintiffs were subject to since at least November 2018. *Id.*

In contrast, the actions of Defendants here did not amount to "intentionally abandoning" the right to compel arbitration in the way that Samsung's actions did. *Id.* at 339. While Samsung failed to provide notification of their intention to arbitrate to the plaintiffs for nearly two years, while also filing a variety of motions, here, the motion to compel arbitration was the first motion filed by Defendants and was filed within a month of receiving summons.

Furthermore, directing Plaintiff to contact Defendants' legal department cannot be construed as waiving Defendants' right to compel arbitration. Even pre-litigation letters which clearly express a preference for litigation have been held to not waive a contractual right to arbitration. *See Borror Prop. Mgmt., LLC v. Oro Karric North, LLC* 979 F.3d 491, 494–96 (6th Cir. 2020) (holding that a pre-litigation letter threatening to "to proceed directly to litigation in either state or federal court" had not waived the party's contractual right to arbitration). For these reasons, Plaintiff's waiver argument, too, fails.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay and Compel Arbitration, (ECF No. 6), is **GRANTED**. This matter is **STAYED** pending the results of arbitration. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**